***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant-carrier AMCOMP was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage shall be determined from a Form 22 Wage Chart.
6. The issues for determination are:
a. Was plaintiff injured by accident while in the scope of his employment on or about September 5, 2001?
b. To what benefits, medical compensation and other remedies, if any, is plaintiff entitled?
c. Did plaintiff fail to provide notice in accordance with N.C. Gen. Stat. § 97-22?
d. Is plaintiff entitled to reasonable attorneys fees pursuant to N.C. Gen. Stat. § 97-88.1?
7. The parties stipulated the following documentary evidence:
a. Stipulated Exhibit 1 consists of plaintiff's medical records
b. Stipulated Exhibit 2 consists of Industrial Commission forms
8. The depositions of Drs. Rajesh Khurana, Dion J. Arthur, Jason E. Guevara, Rene M. Kotzen and Todd J. Zeh were submitted and received into evidence after the hearing before the deputy commissioner.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 55 years old with a high school education. Plaintiff began his employment with defendant-employer on April 18, 1996 as a machine operator. In May 1999, plaintiff was promoted to the position of an assistant manager of the plant.
2. Plaintiff injured his right leg in a non-work related softball game on July 24, 2001 and was treated at the Moore Regional Hospital Emergency Room. Plaintiff was diagnosed with a hamstring strain and given crutches and a knee immobilizer.
3. On August 9, 2001 plaintiff returned to the Moore Regional Hospital Emergency Room with complaints that his right leg had not healed. He was diagnosed with a muscle strain and given crutches. Plaintiff was subsequently referred to Dr. Jason Guevara, an orthopedic surgeon.
4. Plaintiff first saw Dr. Guevara on August 20, 2001. Plaintiff complained of right hip pain, thigh pain, knee pain and lower back pain. Dr. Guevara believed that plaintiff's complaints were the result of his injury of July 24, 2001. Dr. Guevara diagnosed plaintiff with a mild low back strain, greater trochanteric bursitis and a pulled hamstring. Physical therapy was prescribed to address the bursitis and pulled hamstring. A follow-up appointment was scheduled for October 23, 2001.
5. Plaintiff's supervisor, Ted Hill allowed plaintiff to work half days three times a week in order to attend physical therapy and assigned plaintiff light duty tasks.
6. Thereafter while plaintiff was on light duty as a consequence of his non-work injury to his right knee, plaintiff claimed while he was speaking to co-worker Charles Morrison on September 5, 2001 he stepped back and tripped over a piece of wood and fell to the ground, hurting his lower back. However, Mr. Morrison did not see plaintiff fall and did not report the incident to the plant's general manager, Ted Hill, nor did Mr. Hill come to the scene to help as plaintiff claimed. Plaintiff claimed that he reported the accident to Mr. Hill, and to the office manager, Grace Pollock. But plaintiff admitted that he did not fill out an accident report. Although Ms. Pollock filed an incident report indicating a date of August 9, 2001, she later claimed that she in fact completed this form just prior to September 11, 2001 and offered as an excuse for the error that she was under stress.
7. Plaintiff did not seek medical attention following the alleged injury by accident.
8. Soon after September 5, 2001, Mr. Hill asked plaintiff to operate a front-end loader moving dirt. According to Mr. Hill, both he and plaintiff routinely operated the loaders as one of the managerial tasks for 4-5 hours per day.
9. On September 23, 2001, plaintiff left work and never returned. Plaintiff claimed that as a result of driving the loader for 18-20 days, his back pain became so bad that he could no longer work. Plaintiff claimed he left work to go to the doctor's office due to intense pain. However, there are no medical records that support this contention. Plaintiff did not contemporaneously complain to Mr. Hill about any physical problems due to the type of work nor did he contact Mr. Hill at any time after September 23, 2001 when he left work without explanation and never returned.
10. Plaintiff did not seek medical attention immediately, in fact exactly one month later plaintiff returned to Dr. Guevara on October 23, 2001 for his previously scheduled follow up appointment for the non-work related softball injury, with complaints of increased low back pain on the left side and pain on the right hip due to the trochanteric bursitis. Plaintiff expressed anger and frustration regarding his job and driving the front end loader. However, plaintiff did not report a fall at work nor that the type of work aggravated his condition. Dr. Guevara treated plaintiff with a cortisone injection and referred him to chiropractor, Todd Zeh. Dr. Guevara wrote plaintiff out of work from October 23, 2001 through December 10, 2001, and gave him working restrictions of light duty to consist of no lifting more than 50 pounds, told plaintiff to avoid driving the front-end loader, no standing for more that two hours at a time, no running and no squatting.
11. Plaintiff presented to Mr. Zeh on October 24, 2001, with complaints of low back pain radiating into his legs with some mid-back pain resulting from driving a loader with an injury date of September 5, 2001. An examination by Mr. Zeh revealed a lot of low back muscle spasm, decreased range of motion in the lower back, diminished reflexes in the Achilles and patellar reflexes and some muscle weakness doing a toe walk and heel walk. Mr. Zeh opined that plaintiff's test results are typical of sacroiliac joint problems. Mr. Zeh began treatment of plaintiff and gave him a series of out of work notes from October 24, 2001 through December 5, 2001.
12. Mr. Zeh gave plaintiff a professional service authorization form for treatment at this appointment. Plaintiff took the form authorizing medical treatment to defendant-employer and it was inexplicably signed by Ms. Pollock. Although Ms. Pollock signed the authorization form, she had no reason to believe that she possessed the authority to do so as she had never taken such action on her own before, nor did she properly consult with Mr. Hill regarding plaintiff's request for authorization of treatment by Mr. Zeh or her authorization for such treatment.
13. On November 7, 2001 plaintiff gave a recorded interview to Barbara Jones of AmComp regarding his alleged back injury. Plaintiff claimed he sustained a back injury while driving a front end loader with a broken seat that caused him to bounce excessively and two weeks prior to the interview he could no longer tolerate the pain and went to see his doctor that day. Although plaintiff told Ms. Jones he would provide her with the doctor's name later, he did not do so. Further, plaintiff claimed that his back had already begun hurting sometime in September when he had fallen in the plant after stepping on a piece of wood on the floor. Plaintiff made reference to a situation at work that he could not discuss "on the record" and that if she knew the details, it would help her understand his claim.
14. On November 19, 2001, Mr. Zeh received correspondence from defendant-carrier in which they denied plaintiff's claim and stated that Grace Pollock did not have the authority to authorize medical treatment for work-related injuries; therefore they would not pay for plaintiff's treatment.
15. Plaintiff returned to Dr. Guevara on December 4, 2001. Plaintiff specifically asked Dr. Guevara to note in his records that plaintiff had fallen at work on August 12, 2001. Dr. Guevara found it unusual that plaintiff would not have mentioned this fall at his visit on August 20, 2001 or his visit on October 23, 2001.
16. Plaintiff underwent an MRI on December 18, 2001, which showed disk bulges at L5-S1, L4-L5 and T11-T12. Plaintiff was not given restrictions, as he was no longer working. Mr. Zeh stated that as of December 2001 plaintiff was capable of light duty work. Mr. Zeh opined that plaintiff's condition was correlated to a traumatic incident, which plaintiff described as a fall at work, then weakening as a result of continuous vibration caused by the defective seat of the front-end loader.
17. Mr. Zeh treated plaintiff until February 2002, then referred plaintiff to Dr. Malcomb Shupeck, an orthopaedist and to Dr. Dion Arthur, an orthopaedic spine specialist.
18. Plaintiff saw Dr. Shupeck in January 2002 at Pinehurst Surgical Clinic complaining of back and hip pain. Dr. Shupeck reviewed plaintiff's MRI scan and noted only minimal disk disease that did not appear to present a surgical option for plaintiff. Dr. Shupeck saw no clear neural impingement and was unable to explain plaintiff's complaints of leg pain. Plaintiff did not return to Dr. Shupeck after this visit.
19. Plaintiff presented to Dr. Arthur, an orthopaedic spine specialist, on February 7, 2002 with complaints of low back and bilateral leg pain with more pain in the right leg than the left leg. Plaintiff attributed his pain to slipping on a broken wood pallet at work and falling backwards on August 9, 2001. No mention was made of plaintiff's alleged problems with driving the front end loader. Dr. Arthur suspected some degree of symptom magnification on plaintiff's part, which was confirmed when plaintiff scored 3 out of 5 on Waddell testing. Dr. Arthur determined from an MRI report and the x-rays he had ordered prior to evaluating plaintiff that he had broad disc bulging with bilateral foraminal narrowing at the L4-L5 levels, with a very small disc protrusion at the central aspect of the L5-S1 posterior disc space.
20. According to Dr. Arthur, the MRI studies did not indicate a recent injury such as a fall but were more consistent with a chronic type of a degenerative condition. Dr. Arthur did not give plaintiff any work restrictions and continued treating plaintiff conservatively through May 2002, ordering a series of steroidal injections.
21. Plaintiff presented to his family physician, Dr. Ohadugha, on June 25, 2002 with complaints of bilateral pain to the inner and outer thighs and low back pain. He was diagnosed with sciatica and was referred to Dr. Rene Kotzen, a neurosurgeon with Carolina Neurological Services.
23. Plaintiff presented to neurosurgeon Dr. Kotzen on October 1, 2002, with the chief complaints of low back pain with tingling and numbness down to his lower left leg. Plaintiff claimed his pain was the result of an accidental fall at work caused by falling backwards and landing in an awkward position on a wood pallet on September 5, 2001. Dr. Kotzen diagnosed plaintiff with a bulging disc at L4-L5, which affected the left side more than the right side. The bulging disc was accompanied by stenosis, or tightening of the nerve canal. Dr. Kotzen recommended a combination of decompression and a diskectomy to alleviate plaintiff's symptoms. Although plaintiff was not working at that time, Dr. Kotzen imposed work restrictions of no lifting, pushing, pulling or carrying any objects weighing more than five to ten pounds. He was also not to bend, stoop, crawl or climb ladders.
24. Additional testimony was received by Dr. Rajesh Khurana, a family practitioner. Dr. Khurana saw plaintiff once in 1997 and again in 1999. In 1997, plaintiff presented with several complaints, one of which was mild back pain. He was given anti-inflammatory medication and required no further treatment. In August 1999, plaintiff presented to Dr. Khurana following a minor motor vehicle accident with mild low back pain. Plaintiff did not require medication or work release and Dr. Khurana opined that there was nothing significant in plaintiff's complaint. Plaintiff did not report any continuing back pain on any subsequent visits. However, this testimony contradicts plaintiff's claim that he had no back pain prior to September 2001.
25. Plaintiff was terminated by defendant-employer on December 4, 2001 after he failed to return to work or communicate with his supervisors.
26. The greater weight of the competent and credible evidence of record supports a finding that plaintiff did not sustain an injury by accident or specific traumatic incident on or about September 5, 2001. Specifically, the plaintiff is not accepted as a credible witness as to the testimony offered at the hearing before the deputy commissioner regarding the history of the alleged injury as well as the numerous inconsistent accounts plaintiff gave to the medical providers and the insurer.
27. Plaintiff failed to prove that he sustained a work-related injury due to an alleged fall backwards over a piece of wood on or about September 5, 2001. Plaintiff failed to prove that his injuries were aggravated by driving a front-end loader with a broken seat following the falling incident. Plaintiff failed to prove that he is currently disabled.
28. There were substantial questions of law and fact in this matter and defendants have not defended this claim unreasonably.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff failed to prove that he sustained an injury by specific traumatic incident arising out of and in the course of the employment on or about 5 September 2001. Plaintiff failed to prove that his alleged injury was subsequently aggravated by operating a front-end loader with a damaged seat for defendant-employer in the weeks following his work-related injury. N.C. Gen. Stat. § 97-2(6).
2. Defendants have not defended this claim unreasonably, and plaintiff is not entitled to penalties pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Under the law, plaintiff's claim for benefits must be and is DENIED.
2. Each side shall pay their own costs.
This the 20th day of April 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/llc